UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Homes for Heroes, Inc.,

        Plaintiff,

v.

Building Homes for Heroes,

        Defendant.

Civil No. 11-cv-_____

**COMPLAINT**

**JURY TRIAL DEMANDED**

- - - - - - - - - - - - - - - - - - - - - - - - - - -

COMES NOW Plaintiff Homes for Heroes, Inc. ("HFH") and as for its Complaint

against Defendant Building Homes for Heroes ("Building") states and alleges as follows:

**PARTIES**

1.    Plaintiff HFH is a corporation organized under the laws of the State of

Minnesota, and has its principal place of business at 3495 Northdale Boulevard NW,

Suite 101, Minneapolis, Minnesota 55448.

2.    Defendant Building is a non-profit corporation organized under the laws of

the State of New York, with its principal place of business located at 65 Roosevelt Ave.,

Suite 105, Valley Stream, New York 11581.

**JURISDICTION AND VENUE**

3.    This is an action for infringement of a federally-registered trademark and is

brought under 15 U.S.C. §§ 1114 and 1125.

4.    This Court has subject matter jurisdiction over this action under 15 U.S.C.

§ 1121 and 28 U.S.C. §§ 1331 and 1338(a).

SCANNED
APR 8 2011
U.S. DISTRICT COURT MPLS

5.    This Court has personal jurisdiction over Building because (a) the acts complained of herein have taken place, at least in part, within the State of Minnesota, and (b) Building advertises and promotes itself to donors, potential donors, and potential donees in Minnesota.

6.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 because the state law claims herein originate from the same core set of facts as do the federal claims.

7.    Venue is proper in this District because a substantial part of the acts giving rise to HFH's claims were directed at or accomplished within this District, and because Building has solicited donations from within Minnesota and promotes itself within Minnesota.

## FACTS

8.    Since 2002, HFH has offered a real estate savings program under which military members and veterans, peace officers, firefighters, and emergency medical technicians, and other community heroes can receive well-deserved discounted real estate brokerage, mortgage lending, and associated real estate services through a network of HFH affiliates across the country.   Substantial home buying and selling savings are available to heroes under HFH's program, including reduced commissions and discounted lender fees.

9.    HFH is the owner of several U.S. Trademark Registrations related to its business, including:

a.    Registration No. 2904909 – HOMES FOR HEROES – for mortgage and title brokerage, real estate brokerage, mortgage lending services ("the 909 mark"). The 909 mark was registered on November 23, 2004, and is based upon a first use in commerce of July 12, 2002. The 909 mark has been in continuous use since 2002 and is now incontestable under the Lanham Act, 15 U.S.C. § 1115. Consequently, the registration is conclusive evidence of the mark's validity, HFH's ownership of the mark, and HFH's exclusive right to use the mark in commerce.

b.    Registration No. 2903301 – HFH HOMES FOR HEROES INCORPORATED – for mortgage and title brokerage, real estate brokerage, mortgage lending services. That mark was registered on November 16, 2004, and was based upon a first use in commerce of July 12, 2002.

c.    Registration No. 3635078 – HOMES FOR HEROES YOUR PARTNER IN WORKFORCE HOUSING – for mortgage and title insurance brokerage, real estate brokerage, mortgage lending services, directly and through a network of affiliates. That mark was registered on June 9, 2009, and is based upon a first use in commerce of January 25, 2005

10.    True and correct copies of the registrations for those three marks are attached hereto as Exhibit A. These three marks are referred to collectively herein as the "HOMES FOR HEROES Marks."

11.    HFH also has additional trademark registrations, issued or pending, related to its business, including:

a.      Registration No. 3914083 – FRIENDS OF HEROES – for the administration of a discount program for enabling participants to obtain discounts on goods and services through businesses and organizations offering savings to military members and veterans, peace officers, firefighters, and emergency medical technicians, and other community heroes; providing a web site permitting users to locate businesses and organizations providing savings to military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes, and links to the web sites of such participating businesses and organizations; providing a web site permitting prospective offerors of savings to military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes to join the discount program; advertising and marketing of a discount program for enabling participants to obtain discounts on goods and services through businesses and organizations offering savings to military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes; and providing a web site which features advertisements for businesses and organizations providing savings to military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes. That mark was filed on June 18, 2010, based upon a first use in commerce of June 1, 2007, and registration issued on February 1, 2011.

b.    Registration No. 3914087 – SERVICE DESERVES ITS REWARDS – for mortgage and title insurance brokerage, real estate brokerage, mortgage lending services, directly and through a network of affiliates, enabling discounts on products and services for military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes.  That mark was filed on June 18, 2010, and is based upon a first use in commerce of June 1, 2007.  That mark was published for opposition on November 16, 2010, and registration issued on February 1, 2011.

c.    Serial No. 85066691 – HERO CONNECT – for the administration of a discount program for enabling participants to obtain discounts on goods and services through businesses and organizations offering savings to military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes; providing a web site permitting users to locate businesses and organizations providing savings to military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes, and links to the web sites of such participating businesses and organizations; providing a web site permitting prospective offerors of savings to military members and veterans, peace officers, firefighters, emergency medical technicians,

and other community heroes to join the discount program; advertising and marketing of a discount program for enabling participants to obtain discounts on goods and services through businesses and organizations offering savings to military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes; providing a web site which features advertisements for businesses and organizations providing savings to military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes; and providing a web site which enables military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes to market goods and services to each other. That mark was filed on June 18, 2010, as an "intent to use" filing, was published for opposition on November 16, 2010, and the Notice of Allowance issued on January 11, 2011.

12.    HFH advertises and offers its services in interstate commerce under the HOMES FOR HEROES Marks. HFH has invested substantially in developing the HOMES FOR HEROES Marks, has promoted the HOMES FOR HEROES Marks directly and around the country, and has thereby acquired significant recognition of its services and significant valuable goodwill in the HOMES FOR HEROES Marks.

13.     In addition to its own use of the HOMES FOR HEROES Marks, HFH has licensed affiliates around the country to use the HOMES FOR HEROES Marks in connection with their provision of discounted services to heroes, all under the supervision and control of HFH.

14.     On information and belief, the HOMES FOR HEROES Marks have become widely recognized by the general public as the designation of origin for HFH's services, both directly and through its licensed affiliates.

15.     Building was incorporated in New York on February 27, 2006, and describes itself as "provid[ing] individuals, corporations and others with an opportunity to help our severely wounded and disabled veterans and their families rebuild their lives...[by] supporting these extraordinary men and women, with a goal to build homes for families in dire need."

16.     Building is listed on the registry of charities maintained by the New York Attorney General's Office. Building stated to the Attorney General's Office in its initial filing that, "[t]he charity plans to provide funds to individual war veterans to assist them in building or purchasing homes to accommodate their needs and their families."

17.     The last annual report that Building filed with the New York Attorney General was for calendar year 2009, and was filed on November 19, 2010. It showed gross receipts for that year of $342,035 and expenses of $331,534, with a net asset balance of $27,633. Building reported that it had raised $265,029, but had associated expenses of $140,442, for a net income of $124,587. Building revealed that it paid its

full-time Executive Vice President a salary of $79,535 in that year, while assisting only a total of two donees.

18.     Building's 2009 report stated, "[t]he mission of Building Homes for Heroes is to increase awareness, and to reach out to the public, to assist the severely injured and disabled men and women of the united states military as they begin their struggle with post-war life.  Building Homes for Heroes is committed to supporting these men and women **with a goal to build homes for families** in dire need." (990-EZ pg 2, Statement 6, emphasis added.)

19.     On information and belief, Building has never sought to register its corporate name as a trademark with the U.S. Patent & Trademark Office.

20.     HFH first became aware of Building in 2007, and contacted Building on February 22, 2007 objecting to Building's infringing use of the HOMES FOR HEROES Marks.  On March 2, 2007, Building's attorney assured HFH that she was "looking into the matter" and would respond in detail after completing her review.  On April 18, 2007, Building's attorney assured HFH that "the services offered by Building Homes do not appear to compete with Homes for Heroes' products and services."

21.     Based upon that assurance, HFH took no immediate action against Building.

22.     However, after obtaining that assurance from Building, HFH began receiving inquiries regarding Building and donations by mail which were clearly intended for Building.  When HFH received donations intended for Building, HFH would send

those donations back to the donor; when HFH received emails intended for Building, HFH re-directed those emails.

23.     Because of the clear evidence of confusion by the public, on September 8, 2010, HFH made a written demand on Building that it cease its infringing use of the HOMES FOR HEROES Marks. The Chief Operating Officer of Building Homes for Heroes immediately responded by phone and stated that he thought Building and HFH could find a way to work together, and that Building's attorney would contact HFH's counsel.

24.     In response to a subsequent request from Building's attorney for evidence of actual confusion, HFH's counsel sent several examples of instances of public confusion between HFH and Building.

25.     Building's attorney rejected HFH's demand that her client cease its infringing use, and demanded that HFH limit its use of its HOMES FOR HEROES Marks.

26.     Throughout 2011, Building's attorney and HFH's attorneys exchanged correspondence and spoke on several occasions in an attempt to resolve their dispute without litigation. Those discussions ultimately were unsuccessful.

27.     At no time has HFH permitted Building to use any of the HOMES FOR HEROES Marks, approved any sponsorship of any of Building's activities, become associated with Building, become connected with Building, or acquiesced to Building's use of any of the HOMES FOR HEROES Marks in any manner.

28.    Building's corporate name, which is also being used as a trade name in interstate commerce, completely subsumes HFH's incontestable 909 Mark and is confusingly and deceptive similar to all of HFH's HOMES FOR HEROES Marks.

29.    Building's services are directed at a population – veterans – that is a core constituent of the market which HFH serves – military members and veterans, peace officers, firefighters, emergency medical technicians, and other community heroes. Building's fundraising is directed at the same population – persons interested in assisting heroes – as are HFH's marketing and promotional efforts, including sponsorships of HFH under its FRIENDS OF HEROES program.

30.    The housing-based services offered by Building are related to the housing-based services provided by HFH and its affiliates under the HOMES FOR HEROES Marks.

31.    HFH is entitled to the exclusive right to use the HOMES FOR HEROES Marks in services closely related to those named in its trademark registrations, even though another party may have first used a similar mark on a particular service, regardless of whether there is direct competition between the parties.

32.    HFH has permitted the use of its HOMES FOR HEROES Marks by a Minnesota non-profit corporation, the Homes for Heroes Foundation, since 2008. The Foundation's purpose is to "provide or coordinate financial assistance and housing resources to our Nation's Heroes such as Military personnel, Police/Peace Officers, Firefighter and First Responders who are in need. The Homes For Heroes Foundation,

through its growing network of contractors and generous donors, will endeavor to provide assistance to those who serve our country and communities every day."

33.     Through HFH's association with the Homes for Heroes Foundation and the Foundation's permitted use of the HOMES FOR HEROES Marks, the HOMES FOR HEROES Marks have become associated in the public's mind with a charitable aspect of providing housing for heroes.

34.     There is actual confusion in the public caused directly by Building's infringing use of a name that incorporates and simulates the HOMES FOR HEROES Marks.  HFH has received phone calls, e-mails, and letters from members of the public – and potential consumers of HFH's services – expressing confusion between HFH and Building.

35.     Virtually all of the written instances of confusion by the public have come through HFH's website at http://www.homesforheroes.com.

36.     Building's incorporators were aware or should have been aware in 2006 of the 909 mark because it had been filed at the U.S. Patent and Trademark Office on July 8, 2003 and registration had been granted on November 23, 2004, nearly a year and a half before Building's incorporation.

37.     Building's incorporators actually were aware of the 909 mark as of February 2007 when HFH demanded that Building cease use of that mark.  Despite HFH's demand, Building has intentionally expanded its use of the mark between 2007 and 2011, thus causing public confusion.

38.    HFH carefully controls uses of the HOMES FOR HEROES Marks in order to assure a consistent and positive impression is made on the public.

39.    HFH has no means to control the uses to which Building puts its corporate and trade name, and is unable to assure that Building is presenting a consistent and positive impression on the public.

40.    Members of the public are likely to confuse the source, sponsorship, affiliation, and connection of Building with HFH, due to Building's incorporation and simulation of HFH's HOMES FOR HEROES Marks into its corporate and trade name.

41.    Persons who review the information on file at the charities division of the New York Attorney General's Office regarding Building are likely to form an opinion that Building has accomplished very few actual charitable works, has had fund-raising expenses that consume more than half of the funds raised, and has paid a considerable salary to a full-time employee.

42.    On information and belief, Building intended to trade on the valuable reputation and goodwill of the HOMES FOR HEROES Marks through its use of the HOMES FOR HEROES name in its corporate and trade name.

43.    Like HFH, Building promotes and advertises services nationwide. Building seeks donations from persons who live in the same geographic area as that in which HFH promotes and offers its services.

44.    Building's continued use of the HOMES FOR HEROES Marks and a business and trade name confusingly similar to the HOMES FOR HEROES Marks has caused actual consumer confusion and is likely to cause confusion in the future by

leading the public to falsely believe that Building is in some way sponsored by, affiliated with, or connected with HFH.

45.    Building's unauthorized use of the HOMES FOR HEROES Marks and a business and trade name confusingly similar to the HOMES FOR HEROES Mark has caused and is causing HFH irreparable harm.    Building's unauthorized use of the HOMES FOR HEROES Marks and a business and trade name confusingly similar to the HOMES FOR HEROES Marks has caused and continues to cause irreparable damage to HFH's reputation and goodwill, due to the complete lack of control by HFH over Building's fundraising activities. Building's continued unauthorized use of the HOMES FOR HEROES Marks and a business and trade name confusingly similar to the HOMES FOR HEROES Marks also is likely to interfere with HFH's ability to retain and secure affiliates around the country due to confusion as to the origin, association, connection or sponsorship of Building's fundraising and services.

46.    Building has engaged in the conduct complained of herein intentionally and knowingly, and in reckless disregard of the obvious and inevitable injurious consequences of that conduct.    Building had and has a bad-faith intent in using and continuing to use the HOMES FOR HEROES Marks and a business and trade name confusingly similar to the HOMES FOR HEROES Marks to trade on HFH's hard-earned goodwill and reputation and to confuse and mislead the public.

## COUNT ONE
### Trademark Infringement

47.     HFH realleges and incorporates the preceding paragraphs, as if fully set forth herein.

48.     HFH's registrations of the HOMES FOR HEROES Marks are conclusive evidence of HFH's ownership of the HOMES FOR HEROES Marks and its exclusive right to use the HOMES FOR HEROES Marks in its operations.

49.     Building is not authorized to use the HOMES FOR HEROES Marks or any mark confusingly similar thereto, or any mark that that represents or implies connection, with, sponsorship by, or association with HFH.

50.     Building's unauthorized use of the HOMES FOR HEROES Marks and a business and trade name confusingly similar to the HOMES FOR HEROES Marks constitutes trademark infringement in violation of 15 U.S.C. § 1114.

51.     Building's use of the HOMES FOR HEROES Marks and a business and trade name confusingly similar to the HOMES FOR HEROES Marks has caused and is likely to cause confusion, mistake, and deception in the market as to the source or origin of Building's fundraising and services, and Building's of its corporate and trade name has falsely suggested and continues to falsely suggest that Building, its fundraising, and its services are sponsored by, connected to, or associated with HFH.

52.     As a direct and proximate result of Building's knowing, deliberate, and willful infringement of the HOMES FOR HEROES Marks, HFH has suffered, and will continue to suffer, irreparable harm to its business, reputation, and goodwill, unless and

until the actions of Building alleged herein are enjoined. On this issue, HFH has no adequate remedy at law.

## COUNT TWO
### False Designation of Origin

53.    HFH realleges and incorporates the preceding paragraphs as if fully set forth herein.

54.    As a result of its continuous use of the HOMES FOR HEROES Marks around the country on its own and through the work of its authorized affiliates for over eight years, HFH has become identified in the public mind as the single source of the services for heroes provided under the HOMES FOR HEROES Marks. As such, the HOMES FOR HEROES Marks have acquired distinctiveness.

55.    As a result of the daily efforts of HFH to advance and support the offering of services to heroes around the country and its long-standing work with quality-minded affiliates, the HOMES FOR HEROES Marks have become associated with HFH's services, and the HOMES FOR HEROES Marks have come to symbolize quality and compassion in the delivery of housing-related services to heroes.

56.    Building's use of the HOMES FOR HEROES Marks and a business and trade name confusingly similar to the HOMES FOR HEROES Marks in connection with its fundraising and services has caused and is likely to cause confusion, mistake, and deception as to the source, origin, sponsorship, or affiliation of Building's fundraising activities and services with HFH's services to heroes.

57.    Building is not authorized to use the HOMES FOR HEROES Marks or any mark confusingly similar to those marks, or any mark which represents or implies that Building is in any way affiliated with HFH.

58.    Building's use of the HOMES FOR HEROES Marks in connection with its fundraising and services constitutes trademark infringement in violation of 15 U.S,C.§ 1125(a).

59.    As a direct and proximate result of Building's knowing, deliberate, and willful infringement of the HOMES FOR HEROES Marks, HFH has suffered and will continue to suffer irreparable injury to its business, reputation, and goodwill, unless and until the actions of Building as set out herein are permanently enjoined. On this issue, HFH has no adequate remedy at law.

## COUNT THREE
### Trademark Dilution

60.    HFH realleges and incorporates the preceding paragraphs as if fully set forth herein.

61.    As a result of its continuous use and promotion of the HOMES FOR HEROES Marks around the country on its own and through the work of its authorized affiliates for over eight years, the 909 Mark has become widely recognized by the public in the United States as the designation of the source of HFH's services to heroes, such that it has become a "famous mark" as that term is used in 15 U.S.C. § 1125.

62.     HFH advertises and promotes the 909 Mark via its Website throughout the United States.  Since 2002, HFH has made a substantial investment in advertising and promotion under the HOMES FOR HEROES name and mark.

63.     HFH currently has 271 affiliates, as well as numerous businesses under the Friends of Heroes program, in over 30 states, all of which advertise and promote HFH's programs for helping heroes through local advertising and promotion in their market areas of the HOMES FOR HEROES Marks under rights granted to them by HFH, thereby further cementing the recognition of the 909 Mark as the designation of the source of HFH's services to heroes.

64.     The 909 Mark is registered on the Principal Register of the U.S. Patent and Trademark Office, and is now incontestable.

65.     Building's corporate and trade name completely subsumes the 909 Mark, and as a result is virtually identical to the 909 Mark.

66.     Building's use of its corporate and trade name is a commercial use within the meaning of 15 U.S.C. § 1125.

67.     The 909 Mark has acquired distinctiveness in the public's understanding as a result of HFH's long-standing use and the broad geographic scope of HFH's affiliates' use of the 909 Mark.

68.     Use of the 909 Mark is exclusive to HFH, its licensed affiliates, and the licensed Minnesota charitable foundation.

69.     On information and belief, Building intended to create an association with the 909 Mark (and all of HFH's HOMES FOR HEROES Marks) by its adoption of its corporate and trade name that completely includes the 909 Mark.

70.     Members of the public have actually associated Building's corporate and trade name with the 909 Mark, based upon the telephone calls, emails, and letters which HFH has received in which the sender has mistakenly believed that HFH is associated with Building.

71.     That incorrect association of Building with HFH – arising from the similarity between Building's corporate/trade name and the 909 Mark – has harmed or may harm the reputation of HFH and of the 909 Mark.

72.     Building's use of its corporate and trade name has caused and will continue to cause dilution of the 909 Mark, such that relief to HFH is proper under 15 U.S.C. § 1125(c).

73.     HFH is entitled to an injunction barring Building's continued use of its corporate and trade name, and any other names confusingly similar to the 909 Mark, under 15 U.S.C. § 1125(c)(5) and 15 U.S.C. § 1116.

74.     To the extent that Building's first use of its trade name in commerce is shown to have been after October 6, 2006, then HFH is also entitled to recover any profits made by Building through its use of that trade name, all damages sustained by HFH from such use, and HFH's costs of this action, under 15 U.S.C. § 1117 (a).

75.     To the extent that Building's first use of its trade name in commerce is shown to have been after October 6, 2006, then based upon Building's adoption of its

corporate and trade name despite notice of the 909 Mark, Building's false representation that its services did not compete with HFH's services, and Building's continued use of that name despite demands from HFH that such diluting use cease, this is an exceptional case under 15 U.S.C. § 1117(a)(3) such that HFH is entitled to an award of its reasonable attorney fees for this action.

## COUNT FOUR
### Minnesota Deceptive Trade Practices

76.     HFH realleges and incorporates the preceding paragraphs, as if fully set forth herein.

77.     Building has used the HOMES FOR HEROES Marks or marks confusingly similar thereto in a manner that has caused and will cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Building's fundraising and services.

78.     Building's actions have caused and will cause a likelihood of confusion or misunderstanding as to the affiliation, connection, or association of Building's fundraising and services with HFH.

79.     Building has willfully engaged in those deceptive trade practice knowing that its use of the HOMES FOR HEROES Marks or marks confusingly similar thereto is likely to cause damage to HFH.

80.     Building's actions constitute deceptive trade practices within the meaning of Minn. Stat. § 325D.44.

81.     HFH is entitled to an injunction under Minn. Stat. § 325D.45. subd, 1.

82.     HFH is entitled to its reasonable attorneys' fees pursuant to Minn. Stat. § 325D.45, subd.2.

## COUNT FIVE
### Dilution Under State Law

83.     HFH realleges and incorporates the preceding paragraphs, as if fully set forth herein.

84.     The 909 Mark is famous in Minnesota, as that term is defined in Minn. Stat. § 333.285.

85.     Building is making commercial use of the 909 Mark, and has done so after the 909 Mark became famous.

86.     Building's use of the 909 Mark is causing dilution of the distinctive quality of the 909 Mark.

87.     Building willfully intended to trade on HFH's reputation or to cause dilution of the 909 Mark.

88.     HFH is entitled to injunctive relief barring any continued use of the 909 Mark by Building, as well as all other relief provided for in Minn. Stat. ch. 333.

## RELIEF REQUESTED

HFH requests that the Court enter judgment in its favor against Building after jury trial on all issues for which a jury is permitted, and:

A.     Grant HFH a preliminary and a permanent injunction against Building, its directors, officers, agents, employees, and successors in interest, prohibiting (1) the use of the HOMES FOR HEROES Marks, or marks confusingly

similar thereto, in any way, including without limitation, using BUILDING

HOMES FOR HEROES as a trade name or corporate name and (2) the use

of http://www.buildinghomesforheroes.com as a Web domain name, on a

Web site or Web page, or in any other manner in connection with electronic

communications.

B.    Order the transfer of the domain name

*http://www.buildinghomesforheroes.com* to HFH.

C.    Find and determine that Building has infringed on and diluted the 909 Mark

and that its actions as alleged herein were and are deliberate, willful, and in

conscious disregard of HFH's rights.

D.    Award HFH its damages, in an amount to be proven at trial, together with

interest and HFH's costs and reasonable attorneys' fees.

E.    Such other relief as the Court deems just and proper.


Dated: _____, 2011.          LOCKRIDGE GRINDAL NAUEN P.L.L.P.

                               By _____
                                   Christopher K. Sandberg (MN # 95485)
                                   David W. Asp (MN #344850)
                                   100 Washington Avenue South, Suite 2200
                                   Minneapolis, MN 55401
                                   Telephone: 612-339-6900
                                   Telecopier: 612-339-0981
                                   cksandberg@locklaw.com
                                   dwasp@locklaw.com

                               Counsel for Plaintiff Homes
                               for Heroes, Inc.